■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD GLASS, Appellant. [55 NYS3d 469]—

Devine, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered February 2, 2015, upon a verdict convicting defendant of the crimes of rape in the first degree and criminal sexual act in the first degree (two counts).

On the evening of July 25, 2010, the victim was sexually assaulted while outdoors feeding cats in the City of Albany. The victim escaped from her assailant, who fled before police arrived and could not be located. An investigation eventually pointed toward defendant as the perpetrator and, in 2013, he was charged in an indictment with rape in the first degree and two counts of criminal sexual act in the first degree. Defendant proceeded to trial and was convicted as charged by a jury. County Court then sentenced defendant, as a second felony offender, to an aggregate prison term of 60 years and 20 years of postrelease supervision.[1] Defendant now appeals.

We affirm. Defendant begins by arguing that the verdict was against the weight of the evidence. Inasmuch as acquittal was a reasonable possibility, we are obliged to conduct a weight of the evidence review in which we "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" in order to "decide[ ] whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 348 [2007]; *accord People v Kancharla*, 23 NY3d 294, 303 [2014]). Defendant does not dispute that the attack itself occurred and that the assailant forced his penis into the victim's mouth, then endeavored to vaginally and anally rape her. He instead argues that the findings that he was the assailant and accomplished the act of rape in the first degree were not supported by the credible proof.

With regard to the question of identity, the victim did not know her attacker. The victim identified defendant as the attacker at trial but, as defendant points out, there was some reason to question that identification. During the investigation, the victim was shown numerous photographs of men who matched her description of the attacker, including one of a man who was not defendant that she thought resembled her attacker. That being said, when investigators eventually spoke to defendant, he admitted that he was "always down" near where the attack occurred and did not remember much of what he did in the summer of 2010 due to his alcohol consumption. Defendant also gave a DNA sample and, while there was not a conclusive match between his DNA and genetic evidence recovered in the aftermath of the attack, testing pointed to him as a potential contributor to the recovered genetic material. For example, the male DNA found in samples taken from a hat left at the scene by the attacker and from the victim's mouth

---

1. Defendant's aggregate sentence is reduced, by operation of law, to 50 years in prison (*see* Penal Law § 70.30 [1] [e] [vi]).

were examined and found to be consistent with that of defendant and his paternal line, a state of affairs true for one in 5,236 men. There was, in short, a good deal of proof pointing to defendant as the assailant.

With regard to the issue of penetration, defendant was charged with committing first degree rape by "engag[ing] in sexual intercourse with another person . . . [b]y forcible compulsion" (Penal Law § 130.35 [1]), sexual intercourse having "its ordinary meaning and occur[ring] upon any penetration, however slight" (Penal Law § 130.00 [1]). The victim testified in no uncertain terms that defendant inserted his penis about "half an inch" into her vagina and that she "squeezed him out." The nurse who conducted a sexual assault examination of the victim soon after the attack also testified to her observations of abrasions and other internal vaginal injuries. This proof was more than ample to show that the requisite penetration occurred so as to complete the charged rape (see e.g. People v White, 185 AD2d 472, 473 [1992], lv denied 80 NY2d 935 [1992]).[2] The jury credited the proof that defendant was the attacker and completed a rape and, "[u]pon our independent review of the record, and according the jury due deference in its resolution of credibility issues," we cannot say that the verdict was against the weight of the evidence (People v Newkirk, 75 AD3d 853, 856 [2010], lv denied 16 NY3d 834 [2011]; see People v VanDeusen, 129 AD3d 1325, 1326 [2015], lv denied 26 NY3d 972 [2015]).

Defendant also asserts that defense counsel was ineffective at trial. Defendant frequented a rescue shelter near the scene of the crime and complains that the shelter records, which were stipulated into evidence subject to redaction, were not sufficiently redacted to remove references to his bad behavior at the shelter. Inasmuch as defense counsel "succeeded in achieving certain redactions" and a proper limiting instruction was given to the jury, we are unpersuaded that "defense counsel provided less than meaningful representation with respect to the" records (People v Santiago, 22 NY3d 740, 750 [2014]; see People v Thomas, 53 AD3d 1099, 1100 [2008], lv denied 11 NY3d 795 [2008]). Likewise, while defendant's identity was at issue, County Court instructed the jury that

---

2. The only reasonable view of this proof was that sufficient penetration had occurred to complete the rape, even if the victim's actions left defendant unable to fully insert his penis into her vagina. Accordingly, County Court did not err in refusing to charge the jury regarding the lesser included offense of attempted rape in the first degree (see People v Kinnard, 98 AD2d 845, 847 [1983], affd 62 NY2d 910 [1984]; cf. People v Newkirk, 75 AD3d 853, 858 [2010], lv denied 16 NY3d 834 [2011]).

the People were obliged to prove defendant's identity beyond a reasonable doubt, and defense counsel was not ineffective in failing to request an additional instruction (*see People v Knight*, 87 NY2d 873, 874-875 [1995]; *People v Cherry*, 46 AD3d 1234, 1237 [2007], *lv denied* 10 NY3d 839 [2008]).

Defense counsel was also not ineffective in failing to object to the allegedly improper characterization of DNA evidence made in the People's summation. As noted above, DNA evidence pointed to, but did not establish, defendant as the perpetrator. The People's summation, while largely appropriate in dealing with the import of the DNA evidence, did overstate that defendant's "DNA [was] on the evidence" and that the isolated male DNA belonged to defendant "or his identical twin." The problematic comments, however, were made in response to criticisms offered by the defense in summation that the isolated male DNA recovered was never compared to the DNA of another potential suspect. The People argued that the comparison was not necessary because other markers on his DNA ruled the potential suspect out as a contributor, and the objectionable comments referred to the trial testimony of a forensic scientist on that issue. Accordingly, even if the People's comments "exceeded what would be considered to be a fair response to defense counsel's closing argument or fair comment on the evidence," the context in which they were made establishes that they "did not rise to the flagrant and pervasive level of misconduct which would deprive defendant of due process" (*People v Robinson*, 16 AD3d 768, 770 [2005], *lv denied* 4 NY3d 856 [2005]; *see People v Collier*, 146 AD3d 1146, 1151 [2017]; *cf. People v Wright*, 25 NY3d 769, 780-785 [2015]; *People v Rozier*, 143 AD3d 1258, 1260 [2016]). Nothing in the foregoing shows ineffective assistance and, after reviewing counsel's performance in its totality and at the time of the representation, we are satisfied that defendant received meaningful representation (*see People v Clark*, 28 NY3d 556, 562-563 [2016]; *People v Ackerman*, 141 AD3d 948, 950 [2016], *lv denied* 28 NY3d 1181 [2017]).

Defendant contends that he was deprived of a fair trial due to the purported mistakes that undergird his ineffective assistance claim, but that argument is both unpreserved and without merit (*see People v Collier*, 146 AD3d at 1151). Lastly, defendant has not accepted any responsibility for the abhorrent acts he was convicted of committing, acts that represent only the latest episode in a deplorable criminal career dating back 40 years, and we do not view the aggregate sentence imposed to be harsh or excessive (*see People v Blackman*, 90

AD3d 1304, 1310-1311 [2011], *lv denied* 19 NY3d 971 [2012]; *People v Jones*, 216 AD2d 612, 612 [1995], *lv denied* 86 NY2d 796 [1995]; *cf. People v Charles*, 124 AD3d 986, 988 [2015], *lv denied* 25 NY3d 950 [2015]).

Peters, P.J., Garry, Mulvey and Aarons, JJ., concur. Ordered that the judgment is affirmed.