People v Cummings (2020 NY Slip Op 06981)





People v Cummings


2020 NY Slip Op 06981


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

110665

[*1]The People of the State of New York, Respondent,
v
Glenn E. Cummings, Appellant.

Calendar Date: October 16, 2020

Before: Lynch, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ.


John R. Trice, Elmira, for appellant.
Kirk O. Martin, District Attorney, Owego (Cheryl Mancini of counsel), for respondent.



Lynch, J.P.
Appeal from a judgment of the County Court of Tioga County (Keene, J.), rendered April 20, 2018, upon a verdict convicting defendant of the crimes of criminal sexual act in the second degree, rape in the second degree, sexual abuse in the third degree and endangering the welfare of a child.
In February 2017, the 14-year-old daughter of defendant's girlfriend (hereinafter the victim) reported to a friend that defendant had sexually abused her. Authorities commenced an investigation and defendant met with police for an interview. During the interview, defendant signed a Miranda waiver and initially denied any sexual contact with the victim but eventually admitted to engaging in inappropriate sexual contact with her. Defendant was thereafter charged by indictment with criminal sexual act in the second degree, rape in the second degree, sexual abuse in the third degree and endangering the welfare of a child. Prior to trial, defendant filed an omnibus motion seeking, among other things, to suppress the statements that he gave to police. Following a suppression hearing — during which defendant argued that the Miranda waiver was invalid and he was under the influence of drugs and alcohol at the time of his incriminating statements — County Court denied defendant's motion to suppress the statements, finding that defendant knowingly, intelligently and voluntarily waived his Miranda rights and that he "did not exhibit any signs of being under the influence of drugs or alcohol" in the videotaped recording of the interview.
A jury trial ensued, after which defendant was convicted as charged. He was sentenced to consecutive prison terms of five years with 10 years of postrelease supervision upon each conviction of criminal sexual act in the second degree and rape in the second degree and to time served on the remaining counts, resulting in an aggregate prison term of 10 years. Defendant appeals.
Defendant contends that the verdict is against the weight of the evidence, primarily challenging the credibility of the victim and asserting that he was impaired at the time of his inculpatory statements to police. We disagree. When conducting a weight of the evidence review, this Court "must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Sanders, 185 AD3d 1280, 1284 [2020] [internal quotation marks, brackets and citations omitted], lv denied ___ NY3d ___ [Oct. 30, 2020]; see People v Callahan, 186 AD3d 943, 943-944 [2020]). In conducting this analysis, "we view the evidence in a neutral light and defer to the jury's credibility assessments" (People v Criss, 151 AD3d 1275, 1276 [2017], lv denied 30 NY3d 979 [2017]). As relevant here, the People were required to establish that defendant, being at least 18 years old, "engage[d] in oral . . . or anal sexual conduct with [the victim when she was] less than [15] years old" (Penal Law § 130.45 [1]), "engage[d] in sexual intercourse with [the victim when she was] less than [15] years old" (Penal Law § 130.30 [1]), "subject[ed] [the victim] to sexual contact without [her] consent" (Penal Law § 130.55), and "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
At trial, the victim testified that she was born in November 2002. She recounted three alleged incidents of sexual abuse by defendant between December 2016 and February 2017, explaining that she lived with defendant, her mother, a sister and two of defendant's children during that time. As to an incident that occurred in or around December 2016, the victim testified that defendant entered her room while she was doing homework and told her to come to the bathroom, where he locked the [*2]doors, told her to sit on the sink, and had vaginal intercourse with her for "five or six minutes." The victim recalled that defendant told her not to tell anyone about the encounter. The victim recounted another encounter in January 2017, explaining that defendant walked into the bathroom when she was about to take a shower and told her, "This will only take a few minutes." She testified that defendant then brought her to his bedroom, locked the doors, had her lie on her back and performed oral sex on her. Defendant then told her to get on her stomach and he "put his penis in her behind." With respect to the third incident — which allegedly occurred on February 6, 2017 — the victim testified that she was sitting on the couch when defendant came over, touched her breasts and "[r]ubbed the inside of [her] vagina." According to the victim, defendant also asked her to touch his penis on that occasion and she complied. The victim testified that the encounter ended when defendant's son returned home and defendant pushed her away. After this incident, the victim went to school and told a friend about the encounters. The principal and the police then got involved.
The victim acknowledged on cross-examination that, when she was undergoing a sexual assault examination after the February 2017 incident, she told one of the examining doctors that defendant never tried to put his penis in her vagina. She also conceded having told the grand jury that she was the one who pushed defendant off of her during the February 2017 incident, instead of the other way around. Additionally, the victim acknowledged that, in November 2015, she falsely reported to school officials that defendant's son had impregnated her, explaining that she fabricated that allegation because she was afraid to name defendant as the true perpetrator. The victim's mother also testified, stating that, in 2015, defendant installed a lock on the inside of two doors in their bedroom purportedly to deter the children from stealing candy from their room.
The People also elicited testimony from Richard Hallett, a police lieutenant who interviewed defendant on February 6, 2017, and obtained defendant's written statement. In the statement, defendant admitted that he touched the victim's vagina in February 2017 and that he had gotten on top of her in January 2017 and "maybe" engaged in anal sex with her. As to the incident in or around December 2016, defendant acknowledged that he and the victim were in the bathroom together but denied engaging in vaginal intercourse, claiming that he merely placed his penis "between her legs." Hallet testified that defendant did not appear impaired at any point during the interview, and two other investigators described defendant — who had driven to the interview without incident — as lucid and oriented when they interacted with him before the interview.
A nurse practitioner who conducted a sexual assault examination of the victim on February 7, 2017 explained that she took swabs of the victim's breasts, mouth, vagina and rectal area and recalled seeing "a small amount of irritation" on the victim's labia. Besides that observation, the examination was otherwise unremarkable. A serologist who tested the swabs revealed that no semen was found on them, but "prostate specific antigen" — which indicates the presence of seminal fluid — was found on the anal swab and blood was found in the crotch of the victim's underwear. A forensic scientist performed a DNA analysis of the evidence obtained during the sexual assault examination, finding DNA that matched either defendant or his biological paternal relatives in the blood on the victim's underwear. The swabs taken from the victim's breasts also contained DNA "from at least two donors," with the [*3]victim being the major contributor and insufficient information to determine the identity of the second donor. As to the prostate specific antigen found on the anal swab, the forensic scientist testified that it contained "a partial mixture profile that was consistent with DNA from at least two male donors," but the identity of the donors could not be identified.
The People also elicited testimony from a psychiatric social worker, who explained that sexually abused children often exhibit symptoms of Child Sexual Abuse Accommodation Syndrome (hereinafter CSAAS) (see People v Spicola, 16 NY3d 441, 465-466 [2011], cert denied 565 US 942 [2011]). The social worker explained that symptoms of CSAAS include "[d]elayed or conflicted disclosure" and "recantation or retraction" of the allegations. He further revealed that, in his treatment of approximately 3,100 abused children, "all of them delayed in disclosing that they had been sexually molested." Finally, the People proffered evidence that defendant was born in 1976 and was thus more than 18 years old at the time of the alleged incidents.
Defendant testified on his own behalf, denying the allegations in full. He explained that he changed the lock on the door that connects the hallway to the bedroom because the mother "was complaining about the door not completely shutting or locking." He otherwise denied having manipulated the lock on the door that connects the bedroom with the bathroom. With respect to his inculpatory statements to police, defendant testified that he had consumed heroin, marihuana and alcohol before the interview, claiming that he was impaired at that time.
Although a different verdict would not have been unreasonable, when weighing the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn therefrom, we conclude that the People proved each element of the charged crimes beyond a reasonable doubt. With respect to criminal sexual act in the second degree and rape in the second degree, the age element of these crimes is not in dispute. Although defendant emphasizes certain inconsistencies between the victim's trial testimony and her statements to police and the grand jury — and notes that she admitted to having fabricated a sexual assault allegation against one of defendant's children — these claims were explored at trial and raised issues of credibility for the jury to resolve (see People v Madsen, 168 AD3d 1134, 1137 [2019]; People v St. Ives, 145 AD3d 1185, 1187 [2016], lv denied 29 NY3d 1036 [2017]; People v Simonetta, 94 AD3d 1242, 1244 [2012], lv denied 19 NY3d 1029 [2012]). In light of the victim's detailed and unequivocal testimony that defendant engaged in oral, anal and vaginal sex with her — which was generally corroborated by DNA evidence and defendant's statements to police — we find no basis to disturb the jury's verdict on the charges of criminal sexual act in the second degree and rape in the second degree (see People v Hughes, 114 AD3d 1021, 1022 [2014], lv denied 23 NY3d 1038 [2014]; People v Hebert, 68 AD3d 1530, 1531 [2009], lv denied 14 NY3d 841 [2010]).
Nor is the verdict on the counts of sexual abuse in the third degree and endangering the welfare of a child against the weight of the evidence (see People v Youngs, 175 AD3d 1604, 1609 [2019]; People v Charles, 124 AD3d 986, 987 [2015], lvs denied 25 NY3d 950, 952 [2015]; People v Beauharnois, 64 AD3d 996, 998 [2009], lv denied 13 NY3d 834 [2009]). With respect to the former charge, the victim's testimony that defendant touched her vagina during the February 2017 encounter was generally [*4]consistent with the findings on the sexual assault examination and corroborated by defendant's statements to police. The victim was statutorily unable to consent to that conduct by virtue of her age (see Penal Law § 130.05 [2] [b]; [3] [a]). Although defendant contends that he was under the influence of drugs and alcohol when he gave the inculpatory statements to police, a jury is "free to selectively credit and reject any part" of witness testimony (People v Bush, 14 AD3d 804, 805 [2005], lv denied 4 NY3d 852 [2005]). Given the independent testimony from three police officers that defendant did not appear impaired before or during the interview, the jury could rationally choose to discredit defendant's claim in that respect. As to endangering the welfare of the child, the nature of defendant's conduct, his request that the victim keep it a secret and his action of locking the doors establish that he was "aware that [his] conduct may likely result in harm to a child" (People v Hitchcock, 98 NY2d 586, 591 [2002] [internal quotation marks, emphasis and citation omitted]). Accordingly, the verdict on all charges is supported by the weight of the evidence.
We also reject defendant's challenge to the severity of the sentence. In that respect, defendant emphasizes certain mitigating factors, including his health ailments, history of substance abuse, difficult upbringing and low score on a risk assessment instrument. Notwithstanding such mitigating factors, we see no reason to disturb the sentence, which was less than the statutory maximum (see Penal Law § 70.02 [1] [c]; [3] [c]), in the interest of justice. Contrary to defendant's assertion, the fact that he was offered a plea deal that would have secured a shorter sentence than the one imposed after trial does not, by itself, establish that he was penalized for exercising his right to trial (see People v Pena, 50 NY2d 400, 412 [1980], cert denied 449 US 1087 [1981]; People v Blond, 96 AD3d 1149, 1154 [2012], lv denied 19 NY3d 1101 [2012]). Given the serious nature of the crimes against a vulnerable teenager with whom defendant lived and his failure to show remorse, we can find no abuse of discretion or extraordinary circumstances that would warrant a modification of the sentence in the interest of justice (see People v Horton, 173 AD3d 1338, 1342 [2019], lv denied 34 NY3d 933 [2019]; People v Blond, 96 AD3d at 1154).
Mulvey, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.