People v Green (2022 NY Slip Op 05353)

People v Green

2022 NY Slip Op 05353

Decided on September 29, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 29, 2022

111083
[*1]The People of the State of New York, Respondent,
v
Christopher Green, Appellant.

Calendar Date:August 17, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Matthew C. Hug, Albany, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Roger D. McDonough, J.), rendered January 18, 2019 in Albany County, upon a verdict convicting defendant of the crimes of rape in the second degree and criminal sexual act in the second degree (three counts).
In 2017, defendant — then 31 years old — was charged in a four-count indictment with rape in the second degree and criminal sexual act in the second degree. Following a jury trial, defendant was convicted of all four counts. Defendant was sentenced to a prison term of six years, to be followed by 10 years of postrelease supervision, for his conviction of rape in the second degree and concurrent prison terms of five years, to be followed by 10 years of postrelease supervision, for each of his convictions of criminal sexual act in the second degree. Defendant appeals.
Initially, defendant contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. As to the conviction of rape in the second degree, defendant contends that the People failed to prove he penetrated the victim's vagina. As to the criminal sexual act convictions, defendant asserts that the People failed to prove he engaged in anal sexual intercourse, thus failing to prove contact. "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Dickinson, 182 AD3d 783, 783 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1065 [2020]); see People v Horton, 173 AD3d 1338, 1340 [3d Dept 2019], lv denied 34 NY3d 933 [2019]). "In contrast, a weight of the evidence analysis requires us to first determine, based on all of the credible evidence, whether a different result would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Flower, 173 AD3d 1449, 1450 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 931 [2019]; see People v Cummings, 188 AD3d 1449, 1450 [3d Dept 2020], lv denied 36 NY3d 1096 [2021]).
As relevant here, a person is guilty of the crime of rape in the second degree when, being 18 years old or older, "he or she engages in sexual intercourse with another person less than [15] years old" (Penal Law § 130.30 [1]). To convict defendant of the crime of criminal sexual act in the second degree, the People were required to show that defendant was 18 years old or older and "engage[d] in oral sexual conduct or anal sexual conduct with [*2]another person less than [15] years old" (Penal Law § 130.45 [1]). "Oral sexual conduct" is defined as "conduct between persons consisting of contact between the mouth and the penis, the mouth and the anus, or the mouth and the vulva or vagina" (Penal Law § 130.00 [2] [a] [internal quotation marks omitted]). "'Anal sexual conduct' means conduct between persons consisting of contact between the penis and anus" (Penal Law § 130.00 [2] [b]). "'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight" (Penal Law § 130.00 [1]). It is undisputed that, at the time the acts were alleged to have taken place, defendant was 31 years old and the victim was 14.
At trial, the victim testified that she made a profile on a dating app called MeetMe. After creating the profile, she began communicating with the profile of a man who subsequently identified himself as defendant. The victim stated that defendant sent an Uber to her house to pick her up and bring her to his hotel. The victim then recounted, in detail, the vaginal intercourse and oral and anal sexual contact.
A sexual assault nurse examiner (hereinafter SANE) testified that she conducted a sexual assault examination of the victim. The SANE recalled the victim's description of where and how the incident occurred, which generally corroborated the victim's testimony. The SANE testified that during the exam, she noticed external trauma to the victim's body including tearing in her perianal area, which was not actively bleeding but had not healed, and some vaginal tearing that was actively bleeding. A forensic scientist with the State Police testified concerning DNA analysis of the swabs and the clothing collected by the SANE and the police. She testified that a swab from the inside of a clear bag was a single-source DNA profile matching defendant. She also testified that the perianal swab of the underwear samples contained a mixture of DNA profiles and that, although she could not conclusively match the control profile of defendant, she was able to discern that he was a major contributor on these samples. She explained that being a major contributor meant that defendant and his biological paternal relatives could not be excluded as being major contributors to the DNA profiles tested. A police sergeant testified that he spoke to the victim after arriving at the hotel and subsequently spoke to defendant. During the conversation, defendant admitted that he had oral and anal contact with the victim, but claimed he was unable to have sexual intercourse.[FN1]
As to the issue of penetration, the victim's unequivocal testimony, coupled with the SANE's observations, was more than ample to show that the requisite penetration occurred (see Penal Law § 130.00 [1]). As to the issues of oral and anal sexual conduct, all that is required is contact and, contrary to defendant's assertion, intercourse or penetration is not required (see Penal Law § 130.00 [2] [a], [b]). The record conclusively [*3]shows the requisite contact. Viewing the foregoing evidence in the light most favorable to the People, we conclude that each and every element of the crimes charged were proven beyond a reasonable doubt (see People v Horton, 173 AD3d at 1340; People v Glass, 150 AD3d 1408, 1410 [3d Dept 2017], lv denied 30 NY3d 1115 [2018]; People v Johnson, 24 AD3d 967, 968 [3d Dept 2005], lv denied 6 NY3d 814 [2006]).
Likewise, we find no support for defendant's assertion that the verdict is against the weight of the evidence. Although a different verdict would not have been unreasonable as the victim had some difficulties recalling all of the details of the incident, the issue of her own credibility was fully explored at trial. There was nothing incredible or inherently unbelievable about the victim's testimony. According great deference to the jury's resolution of credibility issues, we find no basis to disturb the verdict (see People v Cummings, 188 AD3d at 1453; People v Pendell, 164 AD3d 1063, 1065 [3d Dept 2018], affd 33 NY3d 972 [2019]; People v Richards, 78 AD3d 1221, 1224 [3d Dept 2010], lv denied 15 NY3d 955 [2010]).
Defendant next contends that Supreme Court should have suppressed the statements he made to the police at the hotel because they were the product of custodial interrogation that took place before he received Miranda warnings. We disagree. "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d 122, 129 [2005] [citations omitted]). "When determining whether a suspect is in police custody, various factors are considered, such as the amount of time the person spent with the police, whether his or her freedom of action was significantly restricted, the location of the questioning and the atmosphere under which it was conducted, the person's degree of cooperation, whether he or she was apprised of his or her constitutional rights and whether the questioning was investigatory or accusatory in nature" (People v Lyons, 200 AD3d 1222, 1223 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1162 [2022]).
At the suppression hearing, a police sergeant testified that an officer knocked on defendant's hotel room door and defendant allowed the police into his room. Upon noticing another man sleeping in the room, the sergeant asked defendant if he would step into the hallway to speak to him in a more private setting. Defendant agreed and the conversation moved to an area near the stairwell. The sergeant asked defendant some threshold crime scene inquiries — including for his identification — and defendant proffered his driver's license. The sergeant asked another officer to undertake a routine check of defendant's driver's license for any outstanding warrants. The officer took defendant's license to his car to process it.
Supreme Court properly denied suppression of the statements [*4]as defendant was not subject to a custodial interrogation. Miranda's central concern was that of police employment of coercive environments and psychological tactics to compel confessions (see United States v Newton, 181 F Supp 2d 157, 169 [ED NY 2002], affd 369 F3d 659 [2d Cir 2004], cert denied 543 US 947 [2004]). It was not the intent of the Supreme Court of the United States to hamper police in investigating a crime (see Miranda v Arizona, 384 US 436, 477 [1966]). "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" are not affected by the holding (id.). Here, the record amply demonstrates that the questioning was short, defendant was not restrained in any manner, and he cooperated with the police in moving to a more private area and in answering the sergeant's questions. Although an officer was in possession of defendant's driver's license for a period of time to check for any outstanding warrants, we cannot conclude based upon this record that a reasonable person innocent of any wrongdoing in defendants' situation would have believed that he or she was not free to leave (see People v Ortiz, 141 AD3d 872, 874-875 [3d Dept 2016]; People v Vieou, 107 AD3d 1052, 1053 [3d Dept 2013]).
Contrary to defendant's assertion, Supreme Court did not deprive him of a fair trial or the right to confront witnesses by restricting cross-examination of the victim and the State Police forensic scientists. A trial court has "discretion to restrict cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant" (People v Alcarez, 141 AD3d 943, 944 [3d Dept 2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 1025 [2016]; see People v Gannon, 174 AD3d 1054, 1060 [3d Dept 2019], lv denied 34 NY3d 980 [2019]). CPL 60.42, commonly known as the Rape Shield Law, "prohibits the introduction of evidence of a victim's sexual conduct in a prosecution for a sex offense under Penal Law article 130, unless one of five statutory exceptions applies. As relevant here, the fifth exception vests discretion in the trial court to allow evidence of prior sexual conduct to be admitted when such evidence is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice" (People v Gaylord, 194 AD3d 1189, 1189-1190 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 972 [2021]).
During a sidebar conference at trial, defense counsel proffered contradictory statements that the victim made to the hospital doctor and the SANE as the basis to question the victim regarding her history of sexual conduct. Supreme Court [*5]correctly determined that defendant failed to establish any relevance between the statements made to these individuals and the victim's alleged desire to fabricate the allegations. However, based upon the SANE's testimony regarding her observation of vaginal and perianal tearing and bleeding, the court also determined that the victim's sexual conduct in the 12 to 24 hours prior to the incident was relevant, as this could aid defendant in demonstrating that a different sexual partner caused those injuries. Accordingly, Supreme Court restricted defendant's questioning of the victim's sexual conduct to the 48-hour period prior to the incident. We discern no abuse of discretion with Supreme Court curtailing defendant's right to cross-examine the victim concerning her sexual conduct to 48 hours prior to the incident, as it struck an appropriate balance between protecting the victim's privacy while preserving defendant's ability to mount an effective defense (see People v Scott, 16 NY3d 589, 594 [2011]).
Supreme Court also correctly precluded defendant from questioning the State Police forensic scientists about a newspaper article that referenced a lawsuit regarding crime lab procedures vis-À-vis DNA. The procedure mentioned in the newspaper article was different from the procedure utilized by the forensic scientist witnesses in this case. Additionally, defendant did not show that the witnesses in this case were named in the lawsuit. As such, the court's ruling avoided undue delay and confusion concerning the irrelevant newspaper article (see People v Gannon, 174 AD3d at 1061; People v Pendell, 164 AD3d at 1071; People v Serrano, 14 AD3d 874, 876 [3d Dept 2005], lv denied 4 NY3d 803 [2005]).
We find meritless defendant's contention that Supreme Court erred in denying his request to charge the lesser included offense of attempt for each crime. The People properly concede that attempt is included within the greater offense of rape in the second degree and criminal sexual act in the second degree. "Thus, our inquiry distills to whether there is a reasonable view of the evidence which would support a finding that defendant committed such lesser offense but did not commit the greater. In evaluating this question, we must view the evidence in the light most favorable to defendant and assess whether there is some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime" (People v Acevedo, 141 AD3d 843, 845 [3d Dept 2016] [internal quotation marks, ellipses and citations omitted]; see People v Rivera, 23 NY3d 112, 120 [2014]).
The only reasonable view of the proof sustains the position that sufficient penetration had occurred to complete the rape and that anal and oral contact took place. Accordingly, there is no reasonable view of the evidence that would support an acquittal on rape or [*6]the criminal sexual acts but support a conviction of an attempt (see People v Glass, 150 AD3d at 1410 n 2; People v Kinnard, 98 AD2d 845, 847 [3d Dept 1983], affd 62 NY2d 910 [1984]).
We reject defendant's contention that his counsel was ineffective. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Santana, 179 AD3d 1299, 1302 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 973 [2020]; see People v Barzee, 190 AD3d 1016, 1021 [3d Dept 2021], lv denied 36 NY3d 1094 [2021]).
Defendant asserts that his counsel failed to object to what he contends was the People's improper characterization of DNA evidence. While the People overstated the results of the DNA analysis during summation, we are unpersuaded that defense counsel's failure to object to the comment constituted ineffective assistance of counsel. The comment was in direct response to defendant's summation and did not constitute a flagrant and pervasive pattern of prosecutorial misconduct that would deprive defendant of due process (see People v Rudge, 185 AD3d 1214, 1217 [3d Dept 2020], lv denied 35 NY3d 1070 [2020]; People v Drayton, 183 AD3d 1008, 1011-1012 [3d Dept 2020], lv denied 35 NY3d 1065 [2020]; People v Fragassi, 178 AD3d 1153, 1157 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]). Viewing counsel's performance in its totality, including filing an omnibus motion, effectively cross-examining the forensic scientists and other witnesses, making relevant objections and delivering cogent opening and closing statements, defendant received meaningful representation (see People v Perkins, 203 AD3d 1337, 1341 [3d Dept 2022], lv denied 38 NY3d 1035 [2022]; People v Sposito, 193 AD3d 1236, 1241 [3d Dept 2021], affd 37 NY3d 1149 [2022]; People v Bombard, 187 AD3d 1417, 1420 [3d Dept 2020]).
Finally, we find that defendant's sentence was neither unduly harsh nor excessive. "[T]he mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof positive that the defendant was punished for asserting his or her right to trial" (People v Flower, 173 AD3d at 1458 [internal quotation marks, brackets and citations omitted]; see People v Haynes, 177 AD3d 1194, 1198 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]). Although we recognize that the victim held herself out as being 18 years old on the dating app, based on the serious and exploitive nature of the offense — given the vulnerability of the young victim, coupled with defendant's lack of remorse — we discern no basis to reduce the sentence (see People v Velett, 205 AD3d 1143, 1147 [3d Dept 2022]; People v Cummings, 188 AD3d at 1454; People v Flower, 173 AD3d at 1458).
Egan Jr., J.P., Clark, Pritzker and McShan, JJ., concur[*7].
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant stated that his inability was not due to lack of effort, but rather a physical restriction presented by the victim's physiology.