People v Gentry (2023 NY Slip Op 03818)

People v Gentry

2023 NY Slip Op 03818

Decided on July 13, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 13, 2023

110159
[*1]The People of the State of New York, Respondent,
v
Matthew Gentry, Appellant.

Calendar Date:June 8, 2023

Before:Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and McShan, JJ.

Matthew C. Hug, Albany, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Albany County (Peter A. Lynch, J.), rendered November 20, 2017, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree (three counts).
In July 2016, defendant was charged by indictment with two counts of criminal possession of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the fourth degree stemming from his possession of certain drugs at a motel in the Town of Colonie, Albany County. The matter proceeded to trial, after which a mistrial was declared as the jury was unable to reach a unanimous verdict due to deadlock. Defendant was thereafter charged by a superseding indictment in May 2017 with three counts of criminal possession of a controlled substance in the third degree. Following a second jury trial, defendant was found guilty as charged. County Court thereafter sentenced defendant to three concurrent prison terms of 10 years, with three years of postrelease supervision. Defendant appeals.
We turn first to defendant's contention that the superseding indictment is a nullity and the judgment of conviction must be reversed. Initially, inasmuch as defendant did not move to dismiss the superseding indictment before County Court, this issue is unpreserved (see People v Rodriguez, 150 AD2d 265, 266 [1st Dept 1989], lv denied 74 NY2d 818 [1989]). We do, however, take corrective action in the interest of justice (see CPL 470.15 [6] [a]). The People concede that, because the court did not, upon declaring the mistrial on the original indictment, "dismiss the indictment or authorize the People to re-present a new indictment to the [g]rand [j]ury[,] . . . the People were limited to retrying defendant upon the same accusatory instrument" (People v Rodriguez, 150 AD2d at 266); thus, the superseding indictment is a nullity (see People v Moseley, 172 AD3d 1461, 1461 [3d Dept 2019]). However, reversal of the judgment of conviction is not required given that both indictments contained two identical counts — criminal possession of a controlled substance in the third degree based upon violations of Penal Law § 220.16 (1). Indeed, had defendant objected upon the filing of the superseding indictment, the court could have dismissed it as a nullity and reinstated the original indictment, on which the People could then proceed to trial (see People v Frederick, 14 NY3d 913, 916-917 [2010]; People v Afrika, 79 AD3d 1678, 1679 [4th Dept 2010], lv denied 17 NY3d 791 [2011]). "[L]ogically, if the superseding indictment is a nullity . . . then any action or consequence that flowed from its filing — [including] the dismissal of the original indictment — was necessarily a nullity as well. In the absence of any constitutional or statutory double jeopardy bar, the trial court possessed inherent authority to reinstate the original indictment after dismissing the superseding indictment" (People v Frederick, [*2]14 NY3d at 916-917). This objection, however, was not made. While defendant argues for reversal and a new trial on the original indictment, as this Court did in People v Moseley (172 AD3d at 1462),[FN1] given that two of the charges (counts 2 and 3) of which defendant was convicted were contained in the original indictment, retrial on those counts would be a waste of judicial resources as defendant has already had a trial on those two counts (see generally People v Rodriguez, 150 AD2d at 266). This conclusion, however, does not extend to count 1 of the superseding indictment, charging defendant with criminal possession of a controlled substance in the third degree pursuant to Penal Law § 220.16 (12), which was not charged in the original indictment; therefore, we reverse that conviction. To the extent that defendant raises double jeopardy concerns, as the first trial ended in a mistrial, double jeopardy principles do not attach (see Matter of De Canzio v Kennedy, 67 AD2d 111, 116 [4th Dept 1979], lv denied 47 NY2d 709 [1979]; see generally People v Frederick, 14 NY3d at 916-917).
Defendant also argues that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because the drugs did not belong to him and the drugs tested did not match the drugs found by the police. Initially, although defendant made a trial order of dismissal at the close of the People's case, "such motion was not premised on the specific grounds upon which defendant now relies and, as such, his challenge to the legal sufficiency of the evidence is unpreserved" (People v Franklin, 216 AD3d 1304, 1305 [3d Dept 2023]). "Nevertheless, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes. In undertaking such review, we must first determine whether a contrary result would not be unreasonable, as is the case here, before then weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Truitt, 213 AD3d 1145, 1146 [3d Dept 2023] [internal quotation marks, brackets and citations omitted], lv denied 39 NY3d 1144 [2023]).
Testimony at trial established that police officers were on routine patrol at the motel at around 12:10 a.m. on April 8, 2016 doing proactive police work when they encountered a male pacing back and forth outside of the motel (hereinafter the male subject). Chris Smith, a police officer with the Town of Colonie Police Department, spoke with the male subject and learned that he was there to purchase cocaine from someone in room 105. The male subject showed Smith text messages, from a number later identified as defendant's cell phone number, regarding the sale of drugs. After inquiring with the motel as to who was renting room 105, the officers learned that the room was rented by a female (hereinafter the paramour), [*3]for whom there was an active warrant. The police officers then went to room 105, knocked and defendant answered the door. The police officers smelled marijuana and observed a marijuana cigarette on a table. Testimony established that after entering the room, Smith had defendant sit down and asked him if he had identification, after which Smith retrieved defendant's ID from pants that were on a bed, also finding more than $2,000 in cash. While Smith was conversing with defendant, he admitted to having drugs in the crotch of the thermal pants he was wearing; those drugs were retrieved after defendant was placed in handcuffs. The drugs were in a number of bags inside of a black plastic bag. Defendant was taken into custody and brought to the Colonie Police Station, where one of the officers had a conversation with defendant in the booking area in which defendant denied selling heroin and stated that the bags of heroin were for him and the paramour. A State Police investigator trained in narcotics identification testified that the quantity of drugs recovered from defendant's person — about 19 grams of cocaine, worth around $1,500-$2,000, and 83 bags of heroin, worth anywhere from $500-$800 — is not indicative of personal use. A forensic scientist employed by the State Police testified that testing of the drugs revealed that there were 14.578 total grams of cocaine, which is more than half an ounce. The forensic scientist also testified, and her report reveals, that a glassine envelope that was tested contained heroin.
Defendant then took the stand and testified that he went to the motel at around 12:15 a.m. to be intimate with the paramour, who invited him over. Defendant testified that when someone knocked at the door, he answered it and was met by a police officer in uniform. Defendant testified that as soon as he opened the door, one of the police officers pushed him in the room and sat defendant on the bed. Defendant testified that the money found in his pants was from the mother of his child and was for defendant's income taxes. Defendant testified that he tried to leave because the police officers threatened him "with dogs," so he was placed in handcuffs. Defendant testified that he did not tell the police officers that he had drugs in his underwear because "[t]hat would have been a lie because [he] didn't have any drugs on [him]." Defendant denied that drugs were ever removed from his person and testified that "when [he] heard them say they found drugs [his] eyes were closed" so he did not see where the drugs came from. Defendant testified that he would never involve himself with cocaine or heroin, but admitted that he does smoke marihuana, which helps him with his posttraumatic stress disorder. Given the foregoing, "[a]lthough a contrary result would not have been unreasonable" inasmuch as the jury could have believed defendant's version of the events, "after viewing the evidence in a neutral light and deferring to the jury's resolution of the [*4]witnesses' credibility, we are satisfied that the verdict was supported by the weight of the evidence" (People v Hilton, 185 AD3d 1147, 1149 [3d Dept 2020], lv denied 35 NY3d 1095 [2020]; see People v Sorrell, 196 AD3d 923, 925 [3d Dept 2021], lv denied 37 NY3d 1029 [2021]).
Defendant also asserts that County Court erred by denying his motion to suppress the statements he made to police and tangible evidence found during the warrantless search by police. We turn first to defendant's argument that the officers' warrantless entry into the motel room was unlawful, which requires little discussion. To the extent this issue is preserved, we find it without merit. Testimony at the suppression hearing demonstrated that when officers went to the door of the motel room and told defendant that they were there due to an arrest warrant for the paramour, defendant stepped aside, at which point the officers entered the hotel room. It is well settled that "stepping aside from the door to admit the officers is enough to establish consent" (People v Vazquez, 206 AD3d 1621, 1623 [4th Dept 2022] [internal quotation marks and citation omitted], lv denied 39 NY3d 965 [2022]; see People v Xochimitl, 147 AD3d 793, 794 [2d Dept 2017], affd 32 NY3d 1026 [2018]; People v Washington, 209 AD2d 817, 819 [3d Dept 1994], lv denied 85 NY2d 944 [1995]; People v Davis, 120 AD2d 606, 607 [2d Dept 1986], lv denied 68 NY2d 769 [1986]).
We turn now to defendant's contention that statements he made to police in the motel room must be suppressed because they were the product of custodial interrogation that took place without Miranda warnings having been administered. "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Green, 208 AD3d 1539, 1542-1543 [3d Dept 2022] [internal quotation marks and citation omitted]; see People v Lyons, 200 AD3d 1222, 1223 [3d Dept 2021], lv denied 37 NY3d 1162 [2022]). "Various factors to be considered are 'the location, length and atmosphere of the questioning, whether police significantly restricted the defendant's freedom of action, the degree of the defendant's cooperation, and whether the questioning was accusatory or investigatory' " (People v Abdullah, 206 AD3d 1340, 1345 [3d Dept 2022] [brackets omitted], lv denied 39 NY3d 939 [2022], quoting People v Moore, 162 AD3d 1123, 1125 [3d Dept 2018]). "A court's determination that a defendant was not in custody is accorded great weight and will not be disturbed unless clearly erroneous" (People v Fragassi, 178 AD3d 1153, 1156 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1128 [2020]; see People v Jeremiah, 147 AD3d 1199, 1200 [3d Dept 2017], lv denied 29 NY3d 1033 [2017]).
At the suppression hearing, Smith was the sole witness. He testified regarding his encounter with the male subject who told Smith that he was there to purchase drugs [*5]from an individual in room 105, which was confirmed by text messages shown to Smith by the male subject. After Smith learned that the paramour was renting room 105, and that there was an arrest warrant for her, Smith and another police officer knocked on the door. Defendant answered, at which time the other police officer told him that they were looking for the paramour. Defendant opened the door and stepped out of the way and the officers entered the room. Smith testified that, prior to entering the room, he observed a rolled-up cigarette in a brown wrapper and smelled marijuana in the air. Smith then testified that he asked defendant what the cigarette was and if there were any drugs in the room, and defendant said the cigarette was marihuana that he had smoked earlier. While the other officer placed the paramour in custody, Smith stayed with defendant and had him sit in a chair but did not handcuff him. Smith testified that defendant was free to leave, that he never threatened defendant and that defendant never requested to leave. Smith explained to defendant that the officers were there because the male subject had given a statement that he was there to buy drugs from someone in room 105, which defendant denied. Smith observed multiple cell phones in the hotel room and defendant indicated that all except one were his. Smith had dispatch call the cell phone number given to him by the male subject, and one of the cell phones that defendant indicated was his rang. Smith then asked defendant for his name and identification, which defendant told him were in a pair of pants that were on the bed. Smith checked the pockets, where he found defendant's ID as well as a large sum of cash. Smith then stated that he asked, "where are the drugs in the room . . . where are they?" Defendant then said he had a "bag of drugs in the crotch of the [thermal] pants that he was wearing." Smith then put handcuffs on defendant, thereby placing him in custody, and conducted a pat down, during which he retrieved the drugs.
Given the foregoing, County Court determined that defendant was not in custody at the time Smith was asking him questions in the motel room. We agree. As to the various factors considered in reaching this determination, Smith's testimony, which the court credited, established that defendant's freedom of action was not significantly restricted as he was not placed in handcuffs or otherwise physically restrained and the officers did not stand between defendant and the motel room door, nor did they tell him he was not free to leave (see People v Wager, 173 AD3d 1352, 1358 [3d Dept 2019], lv denied 34 NY3d 1020 [2019]; People v Jeremiah, 147 AD3d at 1200-1201; compare People v Abdullah, 206 AD3d at 1346). The questioning was very brief, and defendant was cooperative (see generally People v Brown, 77 AD3d 1186, 1186 [3d Dept 2010]). As to whether the questioning was investigatory or accusatory, although some of the early questions were investigatory, the [*6]final question, asking where the drugs were, was accusatory as it was "likely to elicit [an] incriminating admission[]" (People v Rodney, 85 NY2d 289, 293 [1995]; see People v Callicut, 101 AD3d 1256, 1264 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]). However, the mere fact that this final question was accusatory does not transform the questioning into a custodial situation given the other circumstances present in this case (see People v Hirji, 185 AD3d 1053, 1056 [2d Dept 2020]; People v Morris, 173 AD3d 1797, 1799 [4th Dept 2019], lv denied 34 NY3d 953 [2019]; People v Brown, 153 AD3d 1664, 1665 [4th Dept 2017], lv denied 30 NY3d 1103 [2018]). Therefore, "we cannot conclude based upon this record that a reasonable person innocent of any wrongdoing in defendant['s] situation would have believed that he or she was not free to leave" (People v Green, 208 AD3d at 1543; see People v Ortiz, 141 AD3d 872, 874-875 [3d Dept 2016]). In light of this determination, we need not reach defendant's further argument that the drugs should have been suppressed as the fruit of a Miranda violation.
Finally, we are unpersuaded by defendant's argument that his sentence is harsh and excessive and, as such, decline to disturb the lawful sentence (see People v Jones, 212 AD3d 888, 891 [3d Dept 2023], lv denied 39 NY3d 1111 [2023]; People v Smith, 206 AD3d 1058, 1063 [3d Dept 2022]). To the extent defendant is arguing that he was punished for exercising his right to a jury trial inasmuch as the imposed sentence is longer than that offered pretrial, this argument is unpreserved as he failed to raise it at sentencing (see People v Hayward, 213 AD3d 989, 995 [3d Dept 2023]; People v Houze, 177 AD3d 1184, 1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]). We have examined defendant's remaining contentions, including those raised in his pro se brief, and find them to be lacking in merit.
Garry, P.J., Egan Jr., Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reversing defendant's conviction of criminal possession of a controlled substance in the third degree under count 1 of the second indictment; said count dismissed and the sentence imposed thereon vacated; and, as so modified, affirmed.

Footnotes

Footnote 1: This case is distinguishable from this Court's decision in People v Moseley (172 AD3d at 1461-1462), which reversed the judgment of conviction and remitted the matter for a new trial, inasmuch as in Moseley the only charge the defendant was convicted of was a charge that was not included in the indictment that was not a nullity (id. at 1461). Here, however, two of the charges of which defendant was convicted were contained in the indictment that was not a nullity.