People v Truitt (2023 NY Slip Op 01028)

People v Truitt

2023 NY Slip Op 01028

Decided on February 23, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 23, 2023

112562 
[*1]The People of the State of New York, Respondent,
v
Gabriel N. Truitt, Appellant.

Calendar Date:January 12, 2023

Before:Garry, P.J., Egan Jr., Lynch, Pritzker and McShan, JJ.

The Kindlon Law Firm, PLLC, Albany (Lee C. Kindlon of counsel), for appellant.
John M. Muehl, District Attorney, Cooperstown, for respondent.

McShan, J.
Appeal from a judgment of the County Court of Otsego County (Brian D. Burns, J.), rendered July 17, 2020, upon a verdict convicting defendant of the crimes of arson in the first degree, murder in the first degree and murder in the second degree (two counts).
Following a fire at a multi-family residence in the City of Oneonta, Otsego County in the early morning hours of December 29, 2018 that resulted in the death of a resident (hereinafter the victim), defendant was indicted on charges of arson in the first degree (count 1), murder in the first degree (count 2) and two counts of murder in the second degree (counts 3 and 4). At the conclusion of his ensuing jury trial, defendant was found guilty of all four counts. Defendant was sentenced to life in prison without the possibility of parole on count 2, and concurrent prison terms of 25 years to life on each of the other counts. Defendant appeals.
Turning first to defendant's contention that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence, defendant correctly concedes that his legal sufficiency argument is unpreserved owing to his failure to renew his motion for a trial order of dismissal at the close of his case (see People v Abreu, 195 AD3d 1152, 1153 [3d Dept 2021], lv denied 37 NY3d 1144 [2021]; People v Young, 190 AD3d 1087, 1089 [3d Dept 2021], lv denied 36 NY3d 1102 [2021]). "Nevertheless, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Smith, 210 AD3d 1297, 1297 [3d Dept 2022] [internal quotation marks and citations omitted]). In undertaking such review, we must first determine whether a contrary result would not be unreasonable, as is the case here, before then "weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Myers, 163 AD3d 1152, 1153 [3d Dept 2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1066 [2018]; see People v Green, 208 AD3d 1539, 1540-1541 [3d Dept 2022]). In doing so, we "view [the] evidence in a neutral light while giving deference to the credibility determinations made by the trier of fact" (People v Lekovic, 200 AD3d 1501, 1502 [3d Dept 2021], lv denied 38 NY3d 1008 [2022]). Notably, "we do not distinguish between direct or circumstantial evidence in conducting a legal sufficiency and/or weight of the evidence review" (People v Terry, 196 AD3d 840, 841 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; accord People v Rivera, 212 AD3d 942, ___, 2023 NY Slip Op 00129, *2 [3d Dept 2023]).
In disputing the propriety of his convictions, defendant primarily contends that the People's case was entirely circumstantial and that there was no credible evidence put forth that established his identity as the perpetrator. Further, defendant contends that the [*2]People failed to demonstrate that he harbored any motivation to commit the charged offenses or that he acted with the intent necessary to establish his guilt. The trial evidence established that the fire originated outside of the second-floor apartment of defendant's former paramour (hereinafter the paramour). The apartment was one of five in the building, and the paramour testified that defendant had been to her apartment on several occasions prior to the fire. According to various accounts, the paramour and defendant had a tumultuous relationship; in this regard, the paramour herself testified that their relationship was "rocky," describing defendant as "possessive and controlling." According to the paramour, she had made plans to spend time with defendant the evening of December 28, 2019; however, those plans fell through and the paramour ended up making alternate plans to go to a local bar with another individual. When she and that individual arrived at the bar, they encountered defendant outside. Defendant later approached the individual she arrived with and, after that initial interaction between the two proved uneventful, defendant and the individual were later involved in a fight in a nearby parking garage that resulted in defendant's arrest. The arresting officer who observed defendant that evening described his demeanor as "angry" and "belligerent." Defendant was eventually bailed out by his brother around 3:40 a.m.
The People presented surveillance footage from Tru Cuts, a barber shop owned by the brother, which showed defendant entering the establishment shortly after 4:00 a.m. The footage from Tru Cuts showed defendant immediately approaching a cabinet, removing two bottles and then exiting the shop. The footage also showed that the brother and another unidentified individual had followed defendant into Tru Cuts and briefly remained after he left. Shortly thereafter, footage obtained from Center Street Deli, a convenience store located a few blocks away from Tru Cuts, showed an individual walking briskly shortly before 4:10 a.m., travelling from the direction of Tru Cuts toward the location of the paramour's residence. The paramour identified defendant as the individual in the Center Street Deli surveillance footage based, in part, upon the camouflage pants and hooded sweatshirt he was wearing when she saw him that evening, which was consistent with the account of the officer who had arrested defendant earlier that evening and the surveillance footage from Tru Cuts depicting him in that outfit. Meanwhile, the brother testified at trial that, after defendant left Tru Cuts, the brother briefly remained at the shop before eventually leaving for the paramour's residence at around 4:11 a.m. — which was confirmed by the surveillance footage from Tru Cuts. When the brother arrived, he saw that the paramour's residence was on fire and, after initially running into the home, he left the area and proceeded to a nearby gas station where he borrowed [*3]a phone to call 911. The surveillance footage from Center Street Deli shows the individual that was previously identified as defendant returning from the direction of the paramour's residence toward Tru Cuts shortly after 4:20 a.m. The surveillance footage from Tru Cuts then shows that defendant returned to the shop at around 4:26 a.m.; he later called for a cab and left for a motel. In connection with this evidence, the People presented evidence from several law enforcement members who conducted walks from various routes to and from the address of the fire and Tru Cuts, including from the Center Street Deli, and testified as to the time frame it took them to traverse those routes.
According to the testimony at trial, the first 911 call reporting the fire was received around 4:21 a.m. Responding firefighters testified that they entered the building and ultimately discovered the victim lying face down in the third-floor apartment and, after he was evacuated from the building, he was later pronounced dead due to smoke inhalation. Various members of law enforcement testified that the fire had been intentionally set and had originated outside of the paramour's apartment on the second floor. Moreover, a fire investigator who had investigated the origin of the fire on behalf of the insurer for the residence testified that the burn pattern indicated that a flammable liquid was splashed outside and underneath the door of the apartment. The investigator procured wood samples from inside the doorway of the apartment which indicated the presence of isopropyl alcohol, a flammable liquid. A search of Tru Cuts revealed that defendant's cabinet contained a bottle of a specific brand of 91% isopropyl alcohol, and the paramour confirmed that she had purchased that same product for defendant on prior occasions.
After the fire, law enforcement interviewed both defendant and the brother, and initially arrested the brother after he admitted to leaving the barber shop and going to the paramour's house the morning of the fire. According to the brother's trial testimony, the reason he went to the paramour's house was to see if he could locate defendant's car keys or phone, which defendant had lost during the earlier altercation. Further, other witnesses had reported seeing the brother shortly after the fire and noted that he had smelled like smoke and ash, and investigators later learned that the brother went to a nearby gas station and reported the fire shortly after it had begun. However, a detective investigating the case testified that, while he was incarcerated, the brother had revealed that he knew defendant had left Tru Cuts and that he was concerned defendant had done so to hurt the paramour. Law enforcement later discovered the Center Street Deli surveillance video showing defendant walking towards the paramour's residence from Tru Cuts shortly before the time that the fire was started. Accordingly, law enforcement released the brother and shifted the focus [*4]of their investigation to defendant.
While the jury could have reasonably reached a different verdict had they rejected the inferences from the evidence presented as to defendant's identity as the perpetrator, we are satisfied that the verdict in this case is not against the weight of the evidence. In this case, the jury was presented with surveillance footage on one potential route from the barber shop to the paramour's residence and defendant was identified as the individual walking past the convenience store within a timeframe that provided the opportunity for him to perpetrate the charged offenses (see People v Harris, 177 AD3d 1199, 1201-1202 [3d Dept 2019], lv denied 35 NY3d 970 [2020]; People v Marryshow, 162 AD3d 1313, 1317 [3d Dept 2018]). While defendant insists that the evidence more directly links his brother to the crimes, the credibility issues related to the evidence supporting his identification as the perpetrator, along with any doubts as to his motive for committing the crimes, were presented to the jury, which had an opportunity to consider them when rendering its verdict (see People v Lorenz, 211 AD3d 1109, 1111 [3d Dept 2022]; People v Slocum, 178 AD3d 1131, 1134 [3d Dept 2019], lv denied 35 NY3d 944 [2020]). Moreover, as the jury credited the theory presented by the People, defendant's intent to cause the death of the paramour, which was transferrable to the victim, was readily established through his use of an accelerant to set a fire outside of the paramour's apartment door shortly after 4:00 a.m. (see People v Jones, 202 AD3d 1285, 1287 [3d Dept 2022]; People v Callahan, 186 AD3d 943, 945 [3d Dept 2020]). Altogether, "viewing the evidence in a neutral light, weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, all while deferring to the jury's credibility determinations," we find that defendant's convictions are not against the weight of the evidence (People v Marryshow, 162 AD3d at 1317; see Penal Law § 125.27 [1] [a] [vii]; Penal Law § 125.25 [1], [3]; Penal Law § 150.20 [1]; People v Permaul, 174 AD3d 1127, 1128-1129 [3d Dept 2019], lv denied 34 NY3d 983 [2019]; People v Vega, 170 AD3d 1266, 1271 [3d Dept 2019], lv denied 33 NY3d 1074 [2019]).
As to defendant's various contentions directed at either the absence or adequacy of certain jury instructions, we note that each of his arguments is unpreserved (see People v Terry, 196 AD3d at 847; People v Horton, 181 AD3d 986, 995 [3d Dept 2020], lv denied 35 NY3d 1045 [2020]; People v Weaver, 167 AD3d 1238, 1244 [3d Dept 2018], lv denied 33 NY3d 955 [2019]). In any event, our review of his contentions reflects that defendant's arguments lack merit. We are unpersuaded that a new trial is warranted based on the manner in which County Court clarified an erroneous instruction as to the required intent for arson in the first degree. The record reflects that County Court took appropriate action by [*5]instructing the jury to entirely disregard its initial charge before providing the appropriate pattern criminal jury instruction (cf. People v Mink, 284 AD2d 575, 578 [3d Dept 2001], lv denied 96 NY2d 922 [2001]), and, as there is no indication that the jury was in any way confused by the charge, defendant's claim amounts to nothing more than speculation (see People v Stroud, 55 AD3d 1047, 1048 [3d Dept 2008]; People v Washington, 233 AD2d 684, 687 [3d Dept 1996], lv denied 89 NY2d 1042 [1997]). Defendant's contention that he was entitled to an adverse inference instruction owing to the People's purported failure to turn over any GPS data from his cellular phone is also unsupported, as the record provides no indication that the People were in possession of such evidence (see People v Bonaparte, 196 AD3d 866, 869-870 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]; People v Wheeler, 124 AD3d 1136, 1140 [3d Dept 2015], lv denied 25 NY3d 993 [2015]).We also reject defendant's contention that he was entitled to lesser included offense jury instructions for manslaughter in the first and second degrees on counts 2, 3 and 4, as there is no reasonable view of the evidence, even viewed in the light most favorable to him, that suggests he only intended serious injury to result from his conduct (see People v Dean, 210 AD3d 562, 563 [1st Dept 2022]; People v Ott, 200 AD3d 1642, 1643 [4th Dept 2021], lv denied 38 NY3d 953 [2022], cert denied ___ US ___, 143 S Ct 403 [2022]) or that he acted recklessly rather than intentionally in setting the fire (see People v Rodriguez, 209 AD3d 412, 412 [1st Dept 2022]).
We are further unpersuaded that defendant was denied the effective assistance of counsel. Defendant's argument that counsel should have engaged in certain pretrial motion practice lacks merit, as the failure to pursue arguments that have "little or no chance of success" — a point that is effectively conceded by defendant — does not reflect that he was deprived of meaningful representation (People v Bateman, ___ AD3d ___, ___, 2023 NY Slip Op 00249, *3-4 [3d Dept 2023] [internal quotation marks and citation omitted]; see People v Machia, 206 AD3d 1272, 1277-1278 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]). To the extent that defendant points to the failure to request or object to the aforementioned jury instructions, as we have already noted that these arguments lack merit, we will not deem counsel ineffective on that basis (see People v Calafell, 211 AD3d 1114, 1120 [3d Dept 2022]; People v Bonaparte, 196 AD3d at 869-870; see also People v Permaul, 174 AD3d at 1129-1130). Finally, the record reflects that defense counsel engaged in a cohesive trial strategy aimed at casting reasonable doubt on the motivation and ability of defendant to commit the charged crimes (see People v Lorenz, 211 AD3d at 1113; People v Williams, 206 AD3d 1282, 1290 [3d Dept 2022]; People v Houze, 177 AD3d 1184, 1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]). All told, we find [*6]that defendant's contentions on appeal amount to second-guessing of counsel's strategic decisions with the benefit of hindsight and reject his assertion that he was deprived of meaningful representation (see People v Benevento, 91 NY2d 708, 712 [1998]; People v Sposito, 193 AD3d 1236, 1238 n 1 [3d Dept 2021], affd 37 NY3d 1149 [2022]).
Finally, although the parties do not raise the issue, the judgment must be modified, as the two counts of murder in the second degree upon which defendant was convicted are inclusory concurrent counts of the count of murder in the first degree, upon which he was also convicted (see CPL 300.40 [3] [b]). We therefore reverse his convictions for murder in the second degree and dismiss the corresponding counts in the indictment (see People v Miller, 6 NY3d 295, 303 [2006]; People v Davis, 155 AD3d 1311, 1317 [3d Dept 2017], lv denied 30 NY3d 1114 [2018]; People v Jeremiah, 147 AD3d 1199, 1206 [3d Dept 2017], lv denied 29 NY3d 1033 [2017]). We have examined defendant's remaining contentions, including those in his pro se supplemental brief, and find that they are without merit.
Garry, P.J., Egan Jr., Lynch and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's convictions of murder in the second degree under counts 3 and 4 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.