People v Baque (2024 NY Slip Op 05244)

People v Baque

2024 NY Slip Op 05244

Decided on October 24, 2024

Court of Appeals

Halligan

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 24, 2024

No. 84 

[*1]The People & c., Respondent,
v
Jorge Baque, Appellant.

Sean H. Murray, for appellant.
Charles T. Pollak, for respondent.

HALLIGAN, J.

This case requires us to determine whether the Appellate Division properly conducted a weight of the evidence review of a conviction based solely on circumstantial evidence. Because the Appellate Division's opinion does not manifest a failure to apply the correct legal principle, we affirm.
I.
Jorge Baque's five-month-old daughter was found unresponsive in her crib at 6:30 a.m. on July 30, 2016. Despite efforts to resuscitate her, she was declared dead. An autopsy revealed that the victim had sustained injuries consistent with abusive head trauma and violent shaking. Baque was arrested and charged with manslaughter in the second degree and endangering the welfare of a child.
At trial, the People relied solely on circumstantial evidence, including testimony establishing that the defendant was the last person with the victim before she was found dead, that the victim died from cervical nerve root tearing which prevented her from breathing, and that she would have died within minutes of receiving her injuries. There was no evidence that anyone saw the defendant shake or hit the victim. The trial court gave the Criminal Jury Instruction circumstantial evidence charge without objection. This instruction tells the jury to determine "what facts, if any, have been proven beyond a reasonable doubt, then . . . what inferences, if any, can be drawn from those facts," [*2]and further that "it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (CJI2d[NY] Circumstantial Evidence—Entire Case, https://nycourts.gov/judges/cji/1-General/CJI2d.Circumstantial_Evidence.pdf [last accessed October 1, 2024]). The defendant was convicted of criminally negligent homicide and endangering the welfare of a child.
The defendant appealed, arguing that his conviction was against the weight of the evidence. The Appellate Division affirmed (210 AD3d 1000 [2d Dept 2022]). A Judge of this Court granted leave to appeal (39 NY3d 1077 [2023]), and we now affirm.
II.
In a case that involves solely circumstantial evidence, the ultimate determination of guilt necessarily rests on inference. This type of reasoning differs from the credibility determinations "for which the jury is superbly suited" (People v Kennedy, 47 NY2d 196, 201 [1979]). Although circumstantial evidence is no less reliable than direct evidence (id.), a case that rests purely on circumstantial evidence presents a unique risk "that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree" (People v Benzinger, 36 NY2d 29, 32 [1974]).
As we have explained on numerous occasions, the circumstantial evidence instruction mitigates this risk. It requires the jury to test its inferences by ensuring that "the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (People v Sanchez, 61 NY2d 1022, 1024 [1984]). The jury must ask itself "whether common human experience would lead a reasonable [person], putting [their] mind to it, to reject or accept the inferences asserted for the established facts" (Benzinger, 36 NY2d at 32, quoting People v Borrero, 26 NY2d 430, 435 [1970]). Proper application of the instruction by the jury does not impose "a greater burden of proof than the traditional 'beyond a reasonable doubt' formulation"; rather, it "merely draws attention to the rigorous function which must be undertaken by the finder of fact when presented with a case of purely circumstantial evidence" (People v Barnes, 50 NY2d 375, 380 [1980]).
The question before us is whether the Appellate Division erred as a matter of law in conducting its review of the weight of the evidence, in this purely circumstantial case. Weight of the evidence review is a "unique" power afforded to intermediate appellate courts, and one that they exercise regularly (People v Bleakley, 69 NY2d 490, 495 [1987]). It requires the Appellate Division to "independently assess all the proof" and "to serve, in effect, as a second jury" (id. at 117, citing People v Romero, 7 NY3d 633, 644 n 2). As we have explained, the Appellate Division must first
"determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007]).
The Appellate Division must afford deference to the "fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (Romero, 7 NY3d at 644 [internal quotation marks omitted]), although it may "substitute its own credibility determinations for those made by the jury in an appropriate case" (People v Delamota, 18 NY3d 107, 116-117 [2011]).
In conducting a weight of the evidence review, the Appellate Division will, of course, ask whether the case is based upon purely circumstantial evidence. To be satisfied that the jury was justified in finding guilt beyond a reasonable doubt in a circumstantial evidence case, the Appellate Division must satisfy itself that "the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a [*3]reasonable doubt every reasonable hypothesis of innocence" (Sanchez, 61 NY2d at 1024). That proposition is not novel or controversial, and certainly does not require the Appellate Division to charge itself with the applicable jury instruction. The People conceded as much at oral argument, and the Appellate Division regularly and properly executes this task.[FN1]
III. 

This Court reviews a weight of the evidence determination to assess whether the "order and writings of the intermediate appellate court manifest a lack of application of [its] review power" (Romero, 7 NY3d at 646, quoting Bleakley, 69 NY2d at 496)[FN2]. "[W]e cannot review a weight of the evidence challenge unless the intermediate appellate court manifestly failed to consider the issue or did so using an incorrect legal principle" (People v Kancharla, 23 NY3d 294, 303 [2014]). We have never required the Appellate Division to "manifest its weight of evidence review power by writing in all criminal cases" (Bleakley, 69 NY2d at 496). Indeed, the Appellate Division "could have summarily affirmed without explicitly addressing the merits of defendant's challenge to the weight of the evidence" (Romero, 7 NY3d at 646).
Applying the above standard, we find no basis for reversal here. The Appellate Division's decision notes weight of the evidence precedent from this Court (see 210 AD3d at 1001, citing Danielson, 9 NY3d 342, People v Mateo, 2 NY3d 383, 410 [2004], Bleakley, 69 NY2d at 495, and Romero, 7 NY3d 633). It recites the facts and proceedings below. It grapples with the circumstantial evidence presented to the jury, including that the defendant was the last person with the victim before she was found dead; that the victim's cause of death was severing of her cervical nerves, which caused her to stop breathing and die within minutes; and that her injuries were caused by violent, forceful shaking. Finally, it draws an inference of guilt proven beyond a reasonable doubt, concluding that "because [she] lost consciousness and died after the defendant cared for her, it was reasonable for the jury to conclude beyond a reasonable doubt that the defendant violently and forcefully shook [her], causing her death" (210 AD3d at 1001).
In arguing that the Appellate Division's ruling manifestly failed to apply its review power, the defendant and the dissent point to the use of the word "reasonable" in reference to the jury's finding of guilt. This word choice does not establish that the Appellate Division failed to evaluate inferences from circumstantial evidence with the same lens that the jury used. Bleakley demands more than this to show a manifest failure to apply the proper review power (see 69 NY2d at 496; cf. People v Sanchez, 32 NY3d 1021, 1023 [2018] ["the incorrect language, in the context of the Court's written decision as a whole, did not manifest a lack of application of that review power to which appellants are entitled" (internal quotation marks and alteration omitted)]).
The defendant and the dissent also note that although the parties contested the appropriate application of the circumstantial evidence jury instruction to weight of the evidence review both in their briefs and at oral argument, the Appellate Division did not squarely address this point (see Brief for Defendant-Appellant at 35; dissenting op at 4). The dissent points to snippets of oral argument in asserting that this was the key issue at the Appellate Division (see dissenting op at 3). Bleakley makes crystal clear that our role is not to parse exchanges at oral argument in determining whether the Appellate Division properly conducted weight of the evidence review. That the Court did not recite how it deals with circumstantial evidence when conducting weight of the evidence review does not warrant [*4]reversal, especially given that the Appellate Division had already done so in a prior case (see People v Clavell, 176 AD3d 844, 849-850 [2d Dept 2019]).[FN3]
In sum, we confirm that the same tenets that the jury applies to circumstantial evidence during its deliberations also apply on weight of the evidence review and that the Second Department's reasoning here does not "manifest a lack of application" of the proper standard (Sanchez, 32 NY3d at 1023, quoting Bleakley, 69 NY2d at 496).
The defendant also argues that the Appellate Division improperly applied a legal sufficiency analysis rather than a weight of the evidence review. Given the Appellate Division's reference to our weight of the evidence precedent (including Danielson [9 NY3d 342], Mateo [2 NY3d at 410], Bleakley [69 NY2d at 495], and Romero [7 NY3d 633]), as well as to its statutory obligation under CPL 470.15 (5) to determine, based on the facts, whether a verdict of conviction was against the weight of the evidence, we reject this contention.
Accordingly, the order of the Appellate Division should be affirmed.

GARCIA, J. (concurring):

Intermediate appellate courts have a "unique factual review power" when considering the weight of the evidence in a criminal case (People v Bleakley, 69 NY2d 490, 494 [1987]). We have made clear the standard for that aspect of appellate review (see People v Romero, 7 NY3d 633, 643-644 [2006]). I agree with the majority that the Appellate Division correctly applied that standard in this case. I write separately because I find the remaining "guidance," namely that the appellate court must "satisfy itself" that the trial jury standard for considering circumstantial evidence has been met (majority op at 5), confusing, unnecessary, and potentially counterproductive. I therefore concur in result only.
Upon request, a defendant is entitled to have the Appellate Division conduct a weight of the evidence review (People v Danielson, 9 NY3d 342, 348 [2007]; see CPL 470.15 [5]). It is well-established that the reviewing court must "first [] determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (id. [internal citation omitted]; see also Romero, 7 NY3d at 643-644; Bleakley, 69 NY2d at 495). It is a precise approach tailored to a unique function.
That standard was applied here. I agree with the dissent that the Appellate Division did not expressly apply the circumstantial evidence rule in its weight of the evidence analysis (see dissenting op at 5-6; see also 210 AD3d 1000, 1001 [2d Dept 2022]). I disagree, however, that the Appellate Division was required to do so. I am not quite sure what to make of the majority's view that more was needed, but what was said was enough. More importantly, I am concerned that appellate judges will share that confusion.
After holding that the Appellate Division must "satisfy itself that 'the inference of guilt is the only one that that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence' " (majority op at 5, quoting Sanchez, 61 NY2d 1022, 1024 [1984]), the exact language of the circumstantial evidence jury charge (see CJI2d[NY] Circumstantial Evidence — Entire case), the majority protests that its holding "does not require the Appellate Division to charge itself with the applicable jury instruction" (majority op at 5). How so? The majority offers no distinction between a jury being charged with that language and the majority's awkwardly phrased mandate that an appellate court "satisfy itself" with the same. The circumstantial evidence charge has no place here. That charge must be given upon a defendant's request in a case where "the proof of the defendant's guilt rests solely on circumstantial evidence" (People v Hardy, 26 NY3d 245, 249 [2015]; see People v Barnes, 50 NY2d 375, 380-381 [1980]; CJI2d[NY] Circumstantial Evidence—Entire Case). The charge defines circumstantial evidence as "direct evidence of a fact" that may "give rise to an inference of guilt beyond a reasonable doubt" (CJI2d[NY] Circumstantial Evidence—Entire Case at 1). The charge requires the jury to review the evidence to decide which facts have been proven beyond a reasonable doubt and to then determine whether "the inference of guilt is the only one that can fairly and reasonably be drawn from" those facts, such that the evidence "excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (id. at 2).
The circumstantial evidence charge itself makes clear that "[t]he law draws no distinction between circumstantial evidence and direct evidence in terms of weight or importance" (id. [emphasis added]). The reason for giving the charge "is not that circumstantial evidence is thought to be weaker than direct evidence, since the reverse is frequently true" (People v Benzinger, 36 NY2d 29, 32 [1974]) and the circumstantial evidence charge does not "alter the ultimate burden of proof which must be borne by the People" (Barnes, 50 NY2d at 380). Rather, the purpose of the circumstantial evidence rule is merely to "draw[] attention to the fact that proof by circumstantial evidence may require careful reasoning by the trier of facts" and the additional instruction "hopefully forecloses a danger legitimately associated with circumstantial evidence—that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree" (Benzinger, 36 NY2d 29 at 32 [internal citations omitted]). Appellate Division judges do not need a guardrail to focus their attention on the careful reasoning appropriate in circumstantial evidence cases (see People v Terry, 196 AD3d 840, 841 [3d Dept 2021] [emphasizing that the court does "not distinguish between direct or circumstantial evidence in conducting a legal sufficiency and/or weight of the evidence review"]), or to "mitigate[] th[e] risk" that those judges will "leap" to unfounded conclusions (majority op at 3, quoting Benzinger, 36 NY2d at 32)[FN4].
The majority itself makes the ill-advised leap that appellate judges must "satisfy" themselves that the circumstantial evidence standard has been met, apparently because that court sits as a " 'second jury' " (majority op at 4-5, quoting Romero, 7 NY3d at 644 n 2). The "second jury" comparison, used in Romero only to distinguish the prior inapt "thirteenth juror" analogy (7 NY3d at 644 n 2), is similarly inaccurate and leads us into mischief. On the one hand, the appellate "second jury" is a "super jury" with the power to overturn the first jury's verdict and put an end to the case. Despite that power, however, the appellate court must accord "[g]reat deference . . . to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" and must be "careful not to substitute themselves for the jury" (Bleakley, 69 NY2d at 495 [emphasis added]). In sum, although the Appellate Division and the jury play a similar role in weighing evidence, and "the differences between" them in this respect are "delicately nuanced," those differences nevertheless remain (id.). Our two-part weight of the evidence review standard accounts for those differences. Given the "unique" role of the appellate courts in performing that function, perhaps it is time to abandon all these colorful but inaccurate labels.
The majority claims that the Appellate Division has been "regularly and properly" satisfying itself that the circumstantial evidence test has been met in conducting its weight of the evidence review but provides no citations to that effect (majority op at 5). In fact, the only citation for this statement appears in the related footnote, and the case there, used as an example of others, stands for exactly the opposite approach (see majority op at 5 n 1, citing People v Truitt, 213 AD3d 1145, 1147 [3d Dept 2023] [referencing cases that "have suggested that the circumstantial evidence rule has no application on weight of the evidence review"]). The majority overrules those cases (see majority op at 5 n 1 [Truitt and like cases "should not be followed"]).
Until today, the weight of the evidence review standard was clear [FN5]. Now, appellate courts may well wonder what other jury charges must be "satisfied"—such as a missing witness charge (CJI2d[NY] A Party's Failure to Call a Witness) or hearsay (CJI2d[NY] Limiting Instruction Non-Hearsay Statement: Effect on the Listener)—to avoid error. Unfortunate results are foreseeable. The Appellate Division "is not required to 'manifest its weight of evidence review power by writing in all criminal cases' " (Romero, 7 NY3d at 646, quoting Bleakley, 69 NY2d at 496), and may summarily affirm a conviction "without explicitly addressing the merits of [a] defendant's challenge to the weight of the evidence" (id.). Today's guidance to intermediate appellate courts may just be "the less said the better." With that, everyone will be satisfied.
SINGAS, J. (concurring in result):
There is no indication that the " 'order and writings of the [Appellate Division] manifest a lack of application' " of its exclusive power to review the weight of the evidence (People v Romero, 7 NY3d 633, 646 [2006], quoting People v Bleakley, 69 NY2d 490, 496 [1987]). I thus presume that our Appellate Division colleagues appropriately exercised that power.

WILSON, Chief Judge (dissenting):

The legislature has given the Appellate Division a unique role and duty: only it can perform weight of the evidence review and sit as the "thirteenth juror" in a criminal conviction. A defendant's right to a weight of the evidence review performed under the correct legal standard "is the linchpin of our constitutional and statutory design intended to afford each litigant at least one appellate review of the facts" (People v Bleakley, 69 NY2d 490, 494 [1987]). Only the Court of Appeals can determine whether the Appellate Division has properly applied the law during weight of the evidence review.
I fully agree with the majority that when the Appellate Division performs weight of the evidence review based only on circumstantial evidence, it must apply the circumstantial evidence rule. That is the Appellate Division's unique task: to ensure that the inferences drawn from the evidence are proper and the guilt is the only available inference. The problem with the majority's decision is that we do not know whether the Appellate Division applied that standard to Mr. Baque's case; we have good reasons to think they did not, and the majority does not want to find out, which thus abandons our own role.
I.
In the Appellate Division, the parties hotly contested one pivotal issue: Mr. Baque's contention that the Appellate Division must apply the circumstantial evidence rule in conducting its weight of the evidence review. Mr. Baque's legal arguments in his opening and reply briefs were entirely about the circumstantial evidence rule; the People disagreed: "[i]n appellate review . . . it is error for a reviewing court to evaluate the trial evidence by employing the heightened 'moral certainty' analysis." The People focused their written argument before the Second Department on that issue. Of course, the applicable standard of appellate review determines how the evidence must be evaluated on appeal; applying an incorrect standard of review requires reversal and remittal for application of the correct standard (see e.g. People v Gillotti, 23 NY3d 841, 864 [2014]; People v Kuzdzal, 31 NY3d 478 [2018]; People v Ba, 31 NY3d 478 [2023]).
At oral argument in the Appellate Division, the parties renewed their dispute as to which standard was correct. Mr. Baque's lawyer led by arguing that the Appellate Division had to apply the moral certainty standard and directed the court to a prior Second Department case so holding, People v Clavell, 176 AD3d 844, 849—850 (2019). The sole question from the bench during oral argument was why the circumstantial evidence was "sufficient," which suggests the court may have applied the legal sufficiency standard when weighing the circumstantial evidence.
The People's argument commenced by saying "this is not a sufficiency issue here, this is the weight of the evidence issue. And with respect to the standard for review, it is not the moral certainty standard." The People persisted in that argument, insisting there was no controlling precedent requiring the Appellate Division to apply the circumstantial evidence rule. Instead, the People urged the court to recognize that the standard was "whether an acquittal would have been unreasonable, and in this case an acquittal would have been unreasonable." The entire ten minutes of oral arguments concerned whether the moral certainty rule applied to weight of the evidence review, and if so—or if not—how to interpret the facts to come to the correct result.
The moral certainty rule was not just a point "contested" below (majority op at 7)—it was the contest. Indeed, even when Mr. Baque sought leave to appeal to this Court, the People continued to argue that that the circumstantial evidence rule did not apply to appellate weight of the evidence review: "the moral certainty standard, which is unavailable for consideration by an intermediate appellate court in a legal sufficiency analysis, should not be utilized by that same court in its weight-of-the-evidence review." The People conceded they were wrong only after a Judge of this Court granted leave.
[*5]II.
Even though the pivotal issue before it was which standard of review should apply, the Appellate Division did not choose one or the other. Its sole statement that might have any bearing on the standard of review was a bare legal conclusion that "it was reasonable for the jury to conclude beyond a reasonable doubt that the defendant" was guilty (210 AD3d 1000, 1001 [2d Dept 2022]). To the extent its one clause could be construed as stating some standard, it is not a standard either the People or Mr. Baque advocated. The majority excuses the Appellate Division's failure to respond to the parties' principal argument as well as its recitation of a pseudo-standard that all agree is improper—because a different panel of the Appellate Division in a different case (Clavell) applied the 
correct standard.
That sort of guesswork should not pass for appellate review by our Court. In any event, what is on appeal is not Clavell but Mr. Baque's case, in which the Appellate Division did not cite Clavell. Instead of citing Clavell, the Appellate Division cited two, older cases to support its unusual formulation that "it was reasonable for the jury to find [guilt] beyond a reasonable doubt": People v Hang Bin Li, 154 AD3d 960, 961 (2d Dept 2017) and People v Edwards, 235 AD2d 348, 349 (1st Dept 1997). Those cases do not mention the circumstantial evidence rule at all; they merely are cases that involve infant fatalities. Although factually similar to Mr. Baque's, these cases do explicitly apply the circumstantial evidence rule and thus do not reveal whether the Appellate Division concluded that the rule had any relevance here. Moreover, the majority does not contend that the Appellate Division's citation to those cases suggests that it applied the correct standard. Instead, the majority writes that because the Second Department in Clavell "already" applied the circumstantial evidence rule years before, the panel in Mr. Baque's case did not write to say whether the applied the same correct legal standard in reviewing Mr. Baque's conviction (majority op at 7—8).
But Clavell was central to the parties' briefing in the Appellate Division. Mr. Baque argued that Clavell controlled and required application of the circumstantial evidence rule on appeal; the People argued that it was distinguishable. Mr. Baque's counsel again pressed Clavell at oral argument, to which the People replied there was no controlling precedent on the moral certainty rule. The Appellate Division's citations to other irrelevant cases—but not to Clavell—provide no reassurance it applied (or decided not to apply) the circumstantial evidence rule when conducting its weight of the evidence review. The People also pointed out in their brief that the Third Department several times held that the circumstantial evidence rule does not apply during weight of the evidence review on appeal, thus identifying a departmental split, yet the court remained silent as to what standard it applied when reviewing Mr. Baque's weight of the evidence challenge. Under these circumstances, the Appellate Division's failure to state clearly whether it was applying the circumstantial evidence rule is striking.
The correct standard, as articulated by the majority, requires the exclusion of every other possibility to reach a verdict of guilt for each element proven purely by circumstantial evidence. But the standard articulated by the Appellate Division instead asks whether it was reasonable for the jury to find Mr. Baque guilty beyond a reasonable doubt. That formulation does not rule out the possibility that it would have been reasonable for the jury to reach the opposite conclusion. The appropriate legal standard is not whether the jury's verdict was reasonable; it is whether it was the only possible verdict such that it "exclude[s] to a moral certainty every other hypothesis but that of the guilt of the accused" (People v Lewis, 275 NY 33, 39 [1937]).
Indeed, we reversed and remitted in Bleakley because the Appellate Division had applied an incorrect legal standard very much like the one applied here. In Bleakley, the erroneous standard of review employed by the Appellate Division was "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the defendant's guilt had been proven beyond a reasonable doubt" (69 NY2d at 494). That is virtually the same as asking whether "it was reasonable for the jury to conclude beyond a reasonable doubt" that the defendant was guilty.
Bleakley says, in dicta, that the Appellate Division need not always explain every rationale in its opinion. But Bleakley does not say that the Appellate Division never has to do so, regardless of the circumstances. And the other cases the majority cites for that proposition do not support the majority's position. Kancharla determined that when the Appellate Division does not apply the correct legal standard in weight of the evidence review, our job is to remit, which is exactly what the Court did: "Where the court below erred as a matter of law, the remedy is to reverse and [*6]remit for a proper assessment of the weight of the evidence" (People v Kancharla, 23 NY3d 294, 303 [2014], citing People v Danielson, 9 NY3d 342, 349—350 [2007], People v Romero, 7 NY3d 633, 646 [2006]). This appeal presents a circumstance in which the Appellate Division did need to state explicitly what standard of review it chose so that further review of the pivotal issue by our Court could occur. A brief recap illustrates why:
• the parties vehemently disagreed about whether the Appellate Division must apply the circumstantial evidence rule;
• the parties cited Clavell in their briefs and argued about its import;
• the parties exhaustively briefed the Third Department's (erroneous) understanding of the applicability of the moral certainty rule;
• the sole question the panel asked at oral argument concerned whether the evidence was "insufficient";
• the words the Appellate Division chose that have some bearing on the standard of review are not a correct standard and not the standard advocated by either party;
• the Appellate Division's phrasing appears to come from cases involving review for legal insufficiency, not weight of the evidence; and
• the two cases cited by the Appellate Division to support its odd phrasing do 
 not mention the circumstantial evidence rule.
Mr. Baque's case is thus quite different from Bleakley. If we simply assume that, in the face of fierce debate by the parties, the Appellate Division chose the right standard, we are not doing our job.
We have regularly remitted cases when the Appellate Division's writing was simply unclear (see e.g. In re Kaufmann, 245 NY 423, 431—432 [1927]; People v Callahan, 80 NY2d 273, 285 [1992]; People v Qoshja, 17 NY3d 910, 911 [2011]; Miller v Annucci, 37 NY3d 996, 998-999 [2021]). Here, the Appellate Division's writing was at best unclear, and numerous signs strongly suggest it used the wrong standard.
The cost of a remittal is slight. It merely requires the Appellate Division to use the correct standard in conducting weight of the evidence review in line with today's decision. If the Appellate Division already did so, as the majority assumes, remittal would impose no burden. If the Appellate Division did not apply the standard announced by the majority, failing to remit deprives Mr. Baque of his right to that review.
As we noted in Bleakley, "The complementary review scheme erected in our Constitution and statutes imposes a heavy duty on our important and overburdened intermediate appellate courts . . . especially with respect to review of fact issues" (id. at 493). Nearly forty years later, our appellate courts today are even more overburdened and do not have the time to write on every issue in every case. But where there is a central, disputed issue, a split of authority and no controlling decision from our Court, both Mr. Baque and the system providing for review by the Court of Appeals require one thing: a clear sentence stating the Appellate Division's resolution of a hotly disputed issue. For the reasons stated herein, I would remit for the Appellate Division to apply the correct standard when performing its weight of the evidence review. If it did so the first time, it need only say so.
Order affirmed. Opinion by Judge Halligan. Judges Rivera, Cannataro and Troutman concur. Judge Garcia concurs in result in an opinion. Judge Singas concurs in result in a separate opinion. Chief Judge Wilson dissents in an opinion.
Decided October 24, 2024 

Footnotes

Footnote 1: To the extent lower courts have suggested that the circumstantial evidence rule has no application on weight of the evidence review (see, e.g., People v. Truitt, 213 AD3d 1145, 1147 [3d Dept 2023]), they should not be followed.
Footnote 2: This standard does not allow us to reverse simply because the Appellate Division's writing was "unclear" (dissenting op at 8), and none of the cases cited by the dissent for that proposition involve weight of the evidence review or suggest that our review of a weight of the evidence analysis is more intrusive that what is set forth in Bleakley.
Footnote 3: The dissent faults the Appellate Division for not citing Clavell (see dissenting op at 4), which reversed the trial court, rather than affirming as here. It also complains that citations to People v Hang Bin Li (154 AD3d 960, 961 [2d Dept 2017]) and People v Edwards (235 AD2d 348, 349 [1st Dept 1997])—both of which involved an infant's death by violent shaking—are "irrelevant" (dissenting op at 5). The choice to cite a particular opinion—or not—does not amount to a "manifest lack of application" for purposes of Bleakley.

Footnote 4: Notably, even with respect to trial juries, federal courts and a number of states have abandoned or criticized the special circumstantial evidence instruction as adding far more confusion than value (see e.g. Holland v United States, 348 US 121, 139-140 [1954] ["where the jury is properly instructed on the standards for reasonable doubt," an instruction that circumstantial evidence must "exclude every reasonable hypothesis other than that of guilt" is "confusing and incorrect"]). Many state courts following Holland's lead have dispensed with a circumstantial evidence charge (see State v Humpherys, 134 Idaho 657, 661-662 [2000] [agreeing with "the conclusion of the courts from the growing majority of states that in all criminal cases there should be only one standard of proof, which is beyond a reasonable doubt," and holding defendant was not entitled to additional circumstantial evidence instruction] [collecting cases]; see also People v Gonzalez, 54 NY2d 729, 730-735 [1981] [Fuchsberg, J., concurring] [three judges would have held that the circumstantial evidence charge should no longer be employed at all]; see also Caroll J. Miller, Modern Status of Rule Regarding Necessity of Instruction on Circumstantial Evidence in Criminal Trail—State Cases, 36 ALR4th 1046 [collecting cases]).
Footnote 5: I do not see what authority the People's purported concession at oral argument should have in determining the appropriate legal standard for an appellate court's weight of the evidence review (see majority op at 5)