People v Cruz (2025 NY Slip Op 02968)

People v Cruz

2025 NY Slip Op 02968

Decided on May 15, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 15, 2025

CR-23-0808
[*1]The People of the State of New York, Respondent,
v
Juan Diego Cruz, Appellant.

Calendar Date:March 26, 2025

Before:Egan Jr., J.P., Aarons, Lynch, Reynolds Fitzgerald and Powers, JJ.

Dennis B. Schlenker, Albany, for appellant.
Christopher Liberati-Conant, District Attorney, Hudson, for respondent.

Lynch, J.
Appeal from a judgment of the Supreme Court (Richard McNally Jr., J.), rendered December 7, 2022 in Columbia County, upon a verdict convicting defendant of the crimes of rape in the first degree, rape in the second degree and endangering the welfare of a child.
Defendant was charged by indictment with rape in the first and second degrees and endangering the welfare of a child upon allegations that he engaged in forcible sexual intercourse with a minor (hereinafter the victim). Following a jury trial, defendant was convicted as charged and sentenced to an aggregate prison term of 15 years, to be followed by five years of postrelease supervision. Defendant appeals, arguing, among other things, that Supreme Court erred in denying his Batson challenge.
Because Supreme Court did not render a pretext determination at step three of the Batson protocol as required under the circumstances, we withheld decision on the appeal and remitted the matter to Supreme Court "to enable the trial judge who presided over this matter to determine whether the race-neutral reason proffered by [the People in support of their peremptory challenge] was pretextual" (228 AD3d 1019, 1025 [3d Dept 2024] [internal quotation marks and citation omitted]). Upon remittal, Supreme Court received written submissions from the parties and held a nonevidentiary hearing, following which it determined that the race-neutral reason proffered by the People in support of their peremptory challenge — i.e., that the challenged juror was laughing inappropriately, reflecting an inability to take the case seriously — was not a pretext for discrimination.
After both parties submitted supplemental briefing and further oral argument was held, defendant again challenges the Batson inquiry undertaken by Supreme Court on remittal, arguing that the court merely "rubber stamp[ed]" its prior analysis and should have held a reconstruction hearing at which the parties could "question [the challenged juror] and test whether the proffered reasons for the exercise of the peremptory challenge were pretextual." We disagree.
In remitting the matter to Supreme Court, we noted that the pretext analysis at step three of the Batson protocol is "a question of fact," requiring both an assessment of the surrounding circumstances and "the prosecutor's credibility" (id. at 1024 [internal quotation marks and citations omitted]). Given the trial court's role as a first-hand witness to the proceeding, it was incumbent upon the court to make a pretext determination in the first instance, particularly "where, as here, the race-neutral reasons proffered by the People were based upon the challenged juror's demeanor — an issue that Supreme Court was in a unique position to verify and which [was] not clearly established in the appellate record" (id. at 1024).
Supreme Court's determination now fills in the missing gaps. During the remittal hearing, the trial judge noted that he had reviewed the transcript of the voir dire and "distinctly [*2]recall[ed]" the pertinent portions of the proceeding. He further stated that he "agreed with [the prosecutor's] assessment of the demeanor of the prospective juror" and "believed" the prosecutor "was sincere in his assertion" that he was exercising a peremptory challenge due to a concern that the juror would not take the case seriously, as evidenced by his laughter. In making this determination, the trial judge considered defense counsel's arguments in support of pretext, rejecting the proposition that the failure to ask the juror any questions before making the peremptory challenge was indicative of discrimination in this case, even where the juror had appropriately answered the court's questions about pedigree information at the beginning of the proceeding. Since Supreme Court has now determined that the race-neutral reason proffered for the peremptory challenge was not a pretext for discrimination after giving defense counsel the opportunity to persuade it otherwise, the Batson protocol has been satisfied and the issue is now ripe for appellate review. Contrary to defendant's contention, Supreme Court was not required to hold a reconstruction hearing in these circumstances. Deferring to Supreme Court's factual findings and credibility determinations at step three of the analysis, we discern no basis to disturb the court's Batson ruling (see People v Thaxton, 222 AD3d 1175, 1178 [3d Dept 2023], lv denied 42 NY3d 927 [2024]; People v May, 173 AD3d 1435, 1436 [3d Dept 2019]; People v Ware, 173 AD2d 903, 904 [3d Dept 1991]).

Nor is there any basis to disturb the verdict on legal sufficiency or weight of the evidence grounds. At the time the charges were brought against defendant, a conviction of rape in the first degree required proof that defendant "engage[d] in sexual intercourse with another person . . . [b]y forcible compulsion" (Penal Law § 130.35 [former (1)]).[FN1] Forcible compulsion means to "compel by either . . . use of physical force . . . or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person" (Penal Law § 130.00 [8]). As for the second degree rape charge, the People were required to prove that defendant, being at least 18 years old, "engage[d] in sexual intercourse with another person less than [15] years old" (Penal Law § 130.30 [former (1)]). A person is guilty of endangering the welfare of a child when "[h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
The trial evidence established that defendant, then 25 years old, engaged in forcible sexual intercourse with a 14 year old. The victim testified that, in August 2019, while she was alone at her aunt's house, defendant texted her that he was on his way over and, before she could respond, entered the residence while she was in bed. Defendant attempted to get into bed with the victim, [*3]who retreated to the bathroom. The victim testified that defendant followed her into the bathroom, closed the door, turned off the light, undressed himself, removed her clothes, and "laid [her] down on the floor," where he inserted his penis into her vagina. The victim turned her head to try to avoid defendant kissing her, but he ended up kissing her on her neck and biting her neck and breasts, leaving bruises. After the victim threatened defendant with a nearby glass bottle of shampoo, he "let go of [her]," got her makeup to cover up her bruises, told her not to say anything, and threatened her with retribution if she did so. The victim told a friend about the incident the same day it occurred and eventually reported it to a teacher a few months later during discussions about a separate incident involving a different family member. The teacher reported the victim's statement to a school psychologist, triggering an investigation.
In addition to eliciting testimony from a police investigator, the only other witness called to testify was a developmental psychologist who had evaluated child sex abuse allegations in over 2,000 cases. Although the psychologist did not interview the victim or review any documentation relevant to this case, she testified about the characteristics of child sex abuse generally, explaining the "grooming" behavior that perpetrators utilize prior to the sexual encounter and the factors that might cause a minor victim to delay disclosure. She emphasized on cross-examination that she was not making any judgment in this case and that her testimony should not be interpreted to conclude that defendant committed the crimes charged (see People v Lathrop, 171 AD3d 1473, 1474 [4th Dept 2019], lv denied 33 NY3d 1106 [2019]; compare People v Ruiz, 159 AD3d 1375 [4th Dept 2018]).
On this record, there is a "valid line of reasoning and permissible inferences" from which a rational jury could conclude that defendant was guilty of all of the crimes charged (People v Holmes, 227 AD3d 1184, 1188-1189 [3d Dept 2024], lv denied 42 NY3d 971 [2024]). Accordingly, the verdict is based upon legally sufficient evidence. As for the weight of the evidence, defendant primarily attacks the victim's credibility, emphasizing certain inconsistencies in her testimony and the lack of corroborative evidence. However, any inconsistencies in the victim's testimony were explored on cross-examination and corroborative evidence was not required to obtain a conviction in this case (see CPL 60.20 [3]; People v Groff, 71 NY2d 101, 108-109 [1987]). Defendant also characterizes the victim's description of the event as vague and insufficient to establish that sexual penetration occurred. This argument is belied by the record, as the victim explicitly testified that defendant "introduced" his penis into her vagina, thereby engaging in sexual intercourse. Contrary to defendant's contention, there was also evidence from which the jury could conclude beyond a reasonable doubt [*4]that the sexual encounter occurred by forcible compulsion (see Penal Law § 130.00 [8]).
Although a different verdict would not have been unreasonable, when viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we conclude that the convictions of rape in the first and second degrees and endangering the welfare of a child are not against the weight of the evidence (see People v Cummings, 188 AD3d 1449, 1450 [3d Dept 2020], lv denied 36 NY3d 1096 [2021]; People v Hughes, 114 AD3d 1021, 1022 [3d Dept 2014], lv denied 23 NY3d 1038 [2014]; People v Shofkom, 63 AD3d 1286, 1287 [3d Dept 2009], lv denied 13 NY3d 799 [2009], appeal dismissed 13 NY3d 933 [2010]). As a final matter, we decline defendant's request to reduce the sentence in the interest of justice. Although defendant has no prior criminal history, after considering all relevant circumstances, we do not find the sentence to be unduly harsh or severe (see CPL 470.15 [6] [b]).
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Effective September 1, 2024, Penal Law § 130.35 was amended to replace the term "sexual intercourse" with "vaginal sexual contact" (L 2023, ch 777, § 5). Under the prior statutory scheme, sexual intercourse "ha[d] its ordinary meaning and occur[red] upon any penetration, however slight" (Penal Law § 130.00 [former (1)]). As amended, vaginal sexual contact "means conduct between persons consisting of contact between the penis and the vagina or vulva" (Penal Law § 130.00 [1]).